# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

ANA CANCEL-MUÑIZ O/B/O A.Y.L.C.,

Plaintiff,

v.

FRANK J. BISIGNANO
Commissioner of Social Security,

Defendant.

CIVIL NO.  25-1221 (HRV)

## OPINION AND ORDER

Plaintiff Ana Cancel-Muñiz ("Plaintiff") brings the instant action on behalf of her minor son, A.Y.L.C. ("Claimant"), pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), seeking a review of the Commissioner of Social Security's decision to deny her application for supplemental security income ("SSI"). The Commissioner filed his brief arguing that the decision should be affirmed because it is based on substantial evidence. The parties have consented to the entry of judgment by a United States Magistrate Judge under 28 U.S.C. § 636(c). After careful consideration of the record, and for the reasons outlined below, the Commissioner's decision is **AFFIRMED**.

### I.    LEGAL FRAMEWORK

#### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), any individual may obtain review of a final decision of the Commissioner in which he or she was a party. Under said provision, the

1

Court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner [. . .]" *Id*. In addition, the statute provides that if supported by substantial evidence, the findings of the Commissioner as to any fact, shall be conclusive. *Id*.

A reviewing Court must uphold the decision of the Commissioner if the Administrative Law Judge ("ALJ") applied the correct legal principles, and the determination is supported by substantial evidence. *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). The scope of my review is thus limited. I am tasked with determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence. *See Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000); *see also Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).

To meet the evidentiary benchmark, more than a scintilla of evidence is required. *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018). But the threshold for evidentiary sufficiency is not particularly high; if after looking at the existing administrative record, the reviewing court is persuaded that it contains sufficient evidence to support the Commissioner's factual determinations, the decision is bound to be upheld. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). Substantial evidence exists when "a reasonable mind, reviewing the evidence in the record, could accept it as adequate to support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). The ALJ's decision must be reversed, however, if it was arrived at "by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**B.      The Three-Step Sequential Evaluation Process**

Unlike most adult disability cases handled by this Court, the instant action involves childhood benefits that are determined under "somewhat different standards." *Pagan ex rel. A.C. v. Astrue*, 718 F. Supp. 2d 176, 181 (D. Mass. 2010). Under the provisions of the Act, "a child under the age of 18 is considered 'disabled' for purposes of eligibility for SSI benefits if he has a medically determinable physical or mental impairment which results in marked and severe functional limitation, and which has persisted or can be expected to persist for a continuous period of at least 12 months or result in death." *Beliveau ex rel. Beliveau v. Apfel*, 154 F. Supp. 2d 89, 93 (D. Mass. 2001). In determining whether a child is eligible for SSI benefits on the basis of disability, a three-step evaluation process is followed. *Lopez v. Colvin*, 2017 WL 2273145, at 1 (D. Mass. May 24, 2017); 20 C.F.R. § 416.924. First, the Commissioner must determine whether the child is engaging in "substantial gainful activity." *Beliveau ex rel. Beliveau*, 154 F. Supp. 2d at 93. If not, the Commissioner must next determine whether the child has an impairment (or a combination of impairments) that is "severe." *Id.* Third, the Commissioner must determine whether the impairment meets, medically equals, or functionally equals an impairment listed in the "Listing of Impairments." *Id.* If the child's impairment does not meet, medically equal, or functionally equal a "listed" impairment, the child will be deemed "not disabled" and benefits will be denied. *Id.* (quoting 20 C.F.R. § 416.924(d)).

## II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 3, 2022, Plaintiff filed an application on behalf of Claimant for SSI. *See* Transcript of Social Security Proceedings ("Tr"), Dkt. No. 14, Tr. 15. Claimant was 9 years

old at the time of the filing of the application and allegedly suffered from autism and attention deficit disorder. Tr. 74. On July 14, 2022, Claimant's application was denied initially, and upon reconsideration on February 8, 2023. Thereafter, a written request for a hearing was filed, which was held on February 21, 2024, via telephone. Tr. 15. Claimant testified with the assistance of a Spanish interpreter. The Claimant was represented by attorneys Michael Pail Mazanetz and Richard Magill. On March 26, 2024, the ALJ issued a decision denying the claim for benefits. Tr. 15-23. The Appeals Council denied Plaintiff's request for review on February 13, 2025, making the ALJ's opinion the final decision of the Commissioner. Tr. 1. I briefly summarize below the ALJ's written decision.

The ALJ stated that he considered all symptoms and objective medical evidence. Tr. 15-23. The ALJ applied the three-step sequential evaluation process set forth by the relevant regulations to determine whether a child is disabled. 20 C.F.R. § 416.924(a). At **step one**, he determined that Claimant had not engaged in substantial gainful activity on or after the application date. Tr. 16. At **step two**, the ALJ found that Claimant had the following severe impairments: asthma, conductive hearing loss, attention deficit hyperactivity disorder (ADHD), anxiety disorder, autism spectrum disorder, and learning difficulties. *Id*. The ALJ also found that Claimant had the following non-severe impairments, which were going to be accounted for in the domains of functioning analysis: cellulitis, otitis media, gastroenteritis, and eczema. *Id*. Finally, at **step three**, the ALJ concluded that, as of the alleged onset date of March 3, 2022, Claimant did not have an impairment that "functionally equaled" any of the listed impairments. *Id*. The ALJ specifically considered listings 102.10, 103.03, 112.05, 112.06, 112.10, and 112.11. As

to listing 102.10, the ALJ noted that Claimant had mild conductive hearing loss but there was no evidence that he had an average air conduction hearing threshold of 70 decibels or greater, or a marked speech or language limitation. As for listing 103.03, the evidence did not document three (3) hospitalizations of at least 48 hours in a 12-month period. Tr. 17. With respect to Claimant's mental impairments, the ALJ considered whether the Paragraph B criteria was satisfied and found moderate limitations in all broad areas of functioning. *Id.*

Because the ALJ determined at step three that Claimant did not have an impairment (or combination of impairments) that "met or medically equaled" one of the listed impairments, "the ALJ's analysis turned on whether Claimant had an impartment that 'functionally equaled' a listed impairment." *Lopez*, 2017 WL 2273145, at 5. Functional equivalency is measured in six "domains:" (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). To qualify as functionally equivalent to a listing, the child's impairment "must result in [either] 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). The child has a "marked" limitation—*i.e.,* one "that is 'more than moderate' but 'less than extreme'"—when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). On the other hand, the child has an "extreme" limitation—*i.e.,* "the rating [the Commissioner] gives to the worst limitations"—when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or

complete activities." 20 C.F.R. § 416.926a(e)(3)(i). To functionally equal the listings, an impairment must result in "marked" limitations in two of the domains, or an "extreme" limitation in one domain. *Id.* § 416.926a(a). "In making these determinations, the ALJ considers all relevant factors, including but not limited to: (1) how well the child can initiate and sustain activities, how much extra help []he needs, and the effects of structured or supportive settings; (2) how []he functions in school; and (3) the effects of h[is] medications or other treatment." *Lopez*, 2017 WL 2273145, at 5. After determining that Claimant did not have "marked" limitations in two domains or an "extreme" limitation in one domain, the ALJ concluded that Claimant did not have an impairment that "functionally equaled" a listed impairment prior to March 3, 2022, and was, thus, not disabled. Tr. 23.

### III.   DISCUSSION

Plaintiff argues that the ALJ erred in his decision that Claimant's impairments did not functionally equal the severity of the listings. She specifically takes issue with the determination as to three of six domains: acquiring and using information; interacting and relating to others; and health and physical well-being. As explained in detail below, I find that the ALJ's decision concerning each domain was supported by substantial evidence.

### A.   Issue 1: Acquiring and Using Information Domain

The domain of acquiring and using information examines how well a child is able to learn information, and how well he uses the information that he has learned. 20 C.F.R. § 416.926a(g). After evaluating the state agency consultants' opinions, which found that Claimant had a "marked" limitation in this domain, the ALJ ultimately ruled that

Claimant had a "less than marked limitation" in the acquiring and using information domain. Tr. 18-19. Plaintiff argues that the ALJ improperly evaluated the findings of the state agency consultants because he "neglected to discuss the evidence" state agency consultants relied upon in finding that Claimant was markedly limited in this domain. Docket No. 17 at p. 13. And that the ALJ needed to explain how he considered the "supportability" and "consistency" factors when evaluating medical opinions in Claimant's determination.

However, a finding that Claimant has a marked limitation as to this domain does not change the outcome of the case.[1] Social Security regulation requires at least two marked limitations or one extreme limitation in any of the six domains to functionally equal the listings. *See* 20 C.F.R. § 416.926a(d). Neither the ALJ nor the state agency consultants found that Claimant had marked limitations or an extreme limitation in any other domain. And remanding for the ALJ to discuss the supportability and consistency factors in arriving at his decision would "amount to no more than an empty exercise," given that, as will be discussed below, I find that the ALJ did not err in concluding that Claimant had ess than marked limitations in the domains of interacting and relating with others and physical well-being. *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000); *see also Walker v. Kijakazi*, 2023 WL 7443302, at *5 (5th Cir. Nov. 9, 2023) ("Even if the ALJ did not adequately articulate her reasoning using the 'supportability'

---

[1]    Plaintiff notes that the evidence cited in her brief for this Court's review supports the state agency consultants' finding of a marked limitation. She points to no evidence supporting an extreme limitation finding. *See* Docket No. 17 at p.16.

and 'consistency' factors, any error was harmless because Walker fails to show that had she more fully done so, she would have arrived at a different conclusion."). Ultimately, the Court is being asked to reweigh the evidence,[2] and it will abstain from doing so. *See Olivera-Bahamundi v. Comm'r of Social Sec.*, 2021 WL 1177339, at *6 (D.P.R. Mar. 29, 2021).

**B.    Issue 2: Interacting and Relating with Others**

Plaintiff contends the ALJ erred by finding that Claimant has a "less than marked limitation" in interacting and relating with others. Docket No. 17 at pp. 18-20. The domain of interacting and relating with others "considers how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 149 (N.D.N.Y. 2012). *See also* 20 C.F.R. § 416.926a(i). For children Claimant's age, regulations provide:

> School-age children (age 6 to attainment of age 12). When you enter school, you should be able to develop more lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences.

---

[2]    In its decision, the ALJ considered the improvement in Claimant's academic performance and school functioning; how he was moved to a larger group; Claimant's uncle statements in January 2024 that Claimant was doing well and his grades were good; improved attention. Tr. 22, 1118, 1220, 1222, 1225, 1227, 1236, 1239, 1242, 1244.

Plaintiff urges the Court to consider Claimant's Individualized Educational Program for his third-grade school year but said document is in Spanish. *See* D.P.R. Local Civ. R. 5(c). *See also* Docket No. 17 at p. 15; Tr. 101-1017.

> You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. § 416.926(g)(2)(iv).

Here, the ALJ found that Claimant had less than marked limitations in this area. Tr. 20-22. The ALJ's analysis spanned from early 2022 until 2024. The ALJ noted that as per Plaintiff's testimony on March 15, 2022, Claimant, who suffered from autism and attention deficit, had only one friend. Tr. 19, 258-263. The ALJ also noted that Claimant was bullied at school and had a short attention span that improved with medications. *Id*. In August 2022, Claimant had a therapy session where Plaintiff stated that Claimant had been controlling his anger better. Tr. 20, 431. The ALJ acknowledged that in the fall of 2022, Claimant continued therapy for his mental health and, although he continued controlling his anger, he was the victim of bullying in school. Tr. 20, 414. By June 2023, Plaintiff reported that Claimant was easily distracted in school, hyperactive, and disruptive. Tr. 20. And that he was distracting others in school. However, in November 2023, Plaintiff reported that he was "okay" overall regarding school. Tr. 1236. Claimant's "level ha[d] been going up and he has been doing very good in [class]." *Id*. Importantly, the ALJ noted that in a medication check that took place in January 2024, Claimant's uncle informed that "school has been going well. [...] He is focusing better at school; now that we have increased medications. [Claimant] reports that school is going well[.] ... Family denies further concerns at this time." Tr. 21, 1242. Claimant's grades were "good." *Id*. Further, the ALJ found persuasive the opinion of psychological consultative examiner Dr. David Chiarella.

9

Plaintiff points out that the ALJ needed to consider Claimant's autism diagnosis, the Individualized Education Plan, and the school suspensions that took place in 2023. But ALJs are not obliged to explicitly address every piece of evidence considered in reaching their decision. *N.L.R.B. v. Beverly Enterprises-Massachusetts*, 174 F.3d 13, 26 (1st Cir. 1999); *Tassel v. Astrue*, 882 F. Supp. 2d 143, 148 (D. Me. 2012).  And the truth of the matter is that the record contains evidence demonstrating improvement. Plaintiff is asking the Court to do the impermissible: reweigh the evidence already evaluated by the ALJ. *See Olivera-Bahamundi v. Comm'r of Social Sec.*, 2021 WL 1177339, at *6 (D.P.R. Mar. 29, 2021). I find that substantial evidence supports the ALJ's finding that Claimant had a less than marked limitation in the interacting and relation with others domain.

**C.    Issue 3: Health and Physical Well-Being Domain**

As noted, the ALJ also found that Claimant had less than marked limitations in the domain of health and physical well-being. Tr. 18-19. Claimant sustains that this finding is not supported by substantial evidence because, although the ALJ noted Claimant's asthma exacerbations, he "oversimplified" the record. Docket No. 17 at pp. 21-22. Plaintiff urges the Court to find that Claimant's ten (10) events of illness during 2022 and 2023 support a "marked" limitation finding. *Id*. The Commissioner contends that the "less than marked limitation" is supported by substantial evidence because Claimant responded well to treatment, played sports, had mild conductive hearing loss, and did not suffer any major side effects from his medications. Docket No. 19 at pp. 11-13.

A child has "marked limitations" in the domain of health and physical well-being if he is frequently ill because of the impairments, or if he has frequent exacerbations of the impairments resulting in significant, documented symptoms or signs. 20 C.F.R. § 416.926a(e)(2)(iv). For the purposes of this domain,

> [f]requent means that you have episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more. We may also find that you have a "marked" limitation if you have episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

*Id.* Further, a child has "extreme limitations" if he or she has symptoms that are substantially in excess of the requirements for showing a "marked limitation." *Id.* § 416.926a(e)(3)(iv).

Here, the ALJ considered in his opinion Claimant's episodes of illness in detail. He noted Claimant's March 2022 asthma exacerbation "after having a cold" and having run out of Albuterol; Claimant's May 2022 asthma exacerbation in connection with influenza; the emergency room visit in September 2022 due to a "cough but no shortness of breath;" appointments during October and November 2022 due to cough that at times required the use of an inhaler; Claimant's "tympanostomy tube placement surgery" in November 2022 (ear tube surgery); COVID-19 episode in May 2023; and Claimant's upper respiratory infection in November 2023. Tr. 19-21, 415. Plaintiff contends that the ALJ should have found, pursuant to 20 C.F.R. § 416.926a(e)(2)(iv), a marked limitation in this domain because Claimant had "exacerbations of asthma on March 22, 2022, May

16, 2022, June 7, 2022 (he was very sick for a couple of weeks) October 20, 2022, November 10, 2022, February 21, 2023 (four-day illness), and November 24, 2023." Docket No. 17 at p. 21. And that "[c]ombined, there are more than 10 events for illness during 2022 and 2023, which is more frequent than the regulation['s] noted average of 6 times for that same period of time." *Id*. This argument, however, is unpersuasive.

First, 20 C.F.R. § 416.926a(e)(2)(iv) does not require the ALJ to find a marked limitation in every instance of frequent exacerbations. The wording used in the regulation states "may," which indicates that the ALJ is allowed to, but not obliged. Second, the regulation requires that the "frequent exacerbations" result in significant, documented symptoms or signs. *See* 20 C.F.R. § 416.926a(e)(2)(iv). The record here shows that Claimant had normal air entry, no wheezing, and chest x-rays were clear (May 2022); no shortness of breath, respiratory distress, or wheezing, and normal breath sounds (September 2022); although Claimant used an inhaler, exams showed normal breath sounds and no respiratory distress (fall 2022); normal breath and respiratory effort despite having COVID-19 (May 2023). Tr. 20-21, 366, 369-370, 424, 413-418, 1097. Third, none of the events lasted more than two weeks, as acknowledged by Plaintiff herself. *See* Docket No. 17 at p. 22 ("two of these events occurred for more than a week;" other events likely lasted longer than a few days each.").

The record also shows that, at most, treatment (Robitussin) was given for up to ten (10) days and Albuterol as needed. *See* Tr. 347, 365, 372 (albuterol because of the cough "but [Claimant] has not been in distress"); 393 ("mild, persistent asthma, uncomplicated"), 411, 415, 1148. *See Pagan ex rel. A.C. v. Astrue,* 718 F. Supp. 2d 176, 184 (D. Mass. 2010) (finding that although A.C. was seen in the emergency room on four

occasions between February 2008 and January 2009, none of those episodes lasted at least two weeks, hence none qualified for an extreme limitation, but for a less than marked limitation.).

Without minimizing Claimant's medical conditions, the evidence before the Court does not support a finding for "marked" limitations under 20 C.F.R. § 416.926a(e)(2)(iv). *See Pagan ex rel. A.C.,* 718 F. Supp. 2d at 184 ("To be sure, A.C. experienced intermittent exacerbations of his asthma, but the acute episodes were not sufficiently prolonged to meet the standard for an extreme impairment."); *Bricker v. Astrue,* 2010 WL 4984214, at *6 (W.D. Penn. Dec. 2, 2010) ("Despite the number of Plaintiff's emergency room treatments, the ALJ noted that she had not required any inpatient hospitalizations. Physical examinations and medical tests performed during Plaintiff's emergency room treatments were within normal limits. Further, [...] Plaintiff's treatment records ... only included "indications of severity ranging from stable to moderately persistent asthma and changes in the claimant's medication regimen."). As noted by the ALJ, Claimant responded well to treatments and played sports. I therefore find that the ALJ's decision was supported by substantial evidence.

Finally, even if the ALJ erred in determining that Claimant did not suffer marked limitations in the domain of health and physical well-being, his error was harmless "unless [P]laintiff can show that [Claimant] suffered marked limitations in another domain as well." *J.B. ex rel. Barboza v. Astrue,* 738 F. Supp. 2d 260, 265 (D. Mass. 2010). But "because, as discussed [above], [P]laintiff cannot demonstrate marked limitations in another domain, the ALJ's alleged error in the health and physical well-being assessment [as well as the interacting and relating with others domain] was harmless." *Id.*

**IV.    CONCLUSION**

In view of the above, I find that the ALJ's decision is supported by substantial evidence. For that reason, the decision of the Commissioner is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 1st day of April, 2026.

<u>S/Héctor L. Ramos-Vega</u>
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE